IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| INTEROCEAN TRADE & TRANSPORTATION, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 13-0176-CV-W-REL ) |
| SHANGHAI ANTONG INT'L FREIGHT AGENCY CO. LTD, | ) ) ) |
| Defendant. | ) ) |

## ORDER GRANTING MOTION TO DISMISS

Before the court is a motion to dismiss filed by defendant Shanghai AnTong Int'l Freight Agency Co. Ltd., based on lack of personal jurisdiction. For the following reasons, defendant's motion to dismiss will be granted.

## I.  BACKGROUND

According to the facts alleged in the complaint, which are assumed to be true for purposes of this motion, plaintiff Interocean Trade & Transportation, Inc., ("ITTI"), a Washington corporation with its principal place of business in Washington, is a non-vessel operating common carrier focusing on shipments (usually fireworks) from Asia to the United States. Defendant Shanghai AnTong Int'l Freight Agency Co. Ltd. ("AnTong") is a Chinese shipping company.

Western Fireworks (a non-party fireworks retailer with its principal place of business in Oregon) ordered fireworks from Glorious Company (a non-party fireworks manufacturer located in Hong Kong, China). Plaintiff ITTI was hired to arrange shipments and coordinate with the various entities involved in shipping hazardous materials from China to the United States. ITTI, through T-Z Cargo Ltd. (a non-party with a primary place of business in Shanghai, China), hired defendant AnTong to ship the fireworks to the United States. Defendant AnTong loaded the Glorious/Western shipment at the port in Shanghai, China, on

April 9, 2011. Due to a mix-up by AnTong, the Glorious/Western shipment was sent to Indonesia and the order intended for the company in Indonesia was sent to Western Fireworks in Oregon. The improper shipment was returned from Oregon to the port at Long Beach, California. Plaintiff ITTI attempted to arrange delivery of the correct Glorious/Western shipment without success, resulting in significant economic damage to Western Fireworks. Plaintiff ITTI paid $74,586.26 to Western Fireworks to settle that claim. Plaintiff ITTI also paid to Allports Forwarding (a non-party customs broker with its principal place of business in Oregon) $10,325.04 and took possession of the fireworks which had been returned to the port in Long Beach, California; and then incurred additional transportation and storage costs of $11,821.00 as of September 2, 2011.

Plaintiff ITTI attempted to collect from defendant AnTong this aggregate $96,732.30 paid out by plaintiff ITTI as a result of the incorrect shipment to the United States. Defendant AnTong provided plaintiff ITTI a settlement agreement which ITTI signed and returned; however, AnTong has paid ITTI no funds as of the date of the complaint.

On February 20, 2013, plaintiff ITTI filed an action in the United States District Court for the Western District of Missouri alleging breach of contract, unjust enrichment,[1] and conversion.[2] On June 24, 2013, I granted a one-year extension of time to serve the defendant due to reported difficulties getting all of the documents translated and because the check for service fees was returned due to having been made payable to "The Supreme People's Court of China" rather than "The Supreme People's Court of the People's Republic of China." On

---

[1]This claim is based on plaintiff's belief that AnTong received $30,000 from a subcontractor in Shanghai which was intended to be included in the settlement made to ITTI, and ITTI believes it would be "inequitable" for AnTong to keep this money without compensating ITTI for its losses. The plaintiff does not make clear who "intended" this money to be paid to plaintiff.

[2]This claim is also based on plaintiff's belief that AnTong received $30,000 from a subcontractor which was "intended" to go to plaintiff as part of its settlement with AnTong.

2

Case 4:13-cv-00176-REL   Document 20   Filed 10/04/14   Page 2 of 11

March 19, 2014, I held a teleconference with plaintiff's counsel who provided the following explanation as to why service had not at that time been made:

> [T]he service packet has been returned to us on four different occasions for generally, I would characterize as de minimis issues. In one instance, there was an assertion that the check was stale. In another, the check was made to the Supreme People's Court of China, and the service packet was returned with a request the check be made to . . . the Supreme People's Court of the People's Republic of China. There was one instance where there was a question raised with respect to translation. And then this most recent instance, the request or the reason for the rejection of the service packet was that the Early Assessment Program notice and the Early Assessment Program General Order had not been translated into Chinese. It's my understanding that those items are required to be served with the service packet in a local matter.

(document number 7, page 4).

Plaintiff requested an order waiving the local requirement that the EAP notice and general order be included in the service packet since translation of those items would cause additional delay. That request was granted.[3]

No return of service has been filed; however, defendant, through counsel, filed the motion to dismiss on June 3, 2014.

## II.   MOTION TO DISMISS

When a defendant moves to dismiss for lack of personal jurisdiction, plaintiff bears the burden of proving the existence of jurisdiction over the defendant. Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006). Plaintiff must prove facts which support the exercise of personal jurisdiction. Miller v. Nippon Carbon Co., 528 F.3d 1087, 1090 (8th Cir. 2008).

Courts determine personal jurisdiction in two steps:  whether the defendant is subject to the court's jurisdiction under the State's long-arm statute, and whether the exercise of personal

---

[3]I include this background of the difficulties with service only because the affidavit attached to plaintiff's response to the motion to dismiss accuses defendant of using its influence to delay the service of this suit for over a year (paragraph 26 of Michael Nicol's affidavit). There was never an allegation during this teleconference that defendant had anything to do with the delay of service. In any event, the reason for the delay of service is irrelevant to the outcome of this motion to dismiss.

3

jurisdiction comports with the requirements of due process. Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998); Stanton v. St. Jude Medical, Inc., 340 F.3d 690, 693 (8th Cir. 2003).

**Missouri's long-arm statute.** The Missouri long-arm statute applies only to causes of action arising from in-state conduct:

> Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
>
> (1) The transaction of any business within this state;
>
> (2) The making of any contract within this state;
>
> (3) The commission of a tortious act within this state;
>
> (4) The ownership, use, or possession of any real estate situated in this state;
>
> (5) The contracting to insure any person, property or risk located within this state at the time of contracting;
>
> (6) Engaging in an act of sexual intercourse within this state with the mother of a child on or near the probable period of conception of that child.

R.S.Mo. § 506.500(1).

There is no allegation in the complaint that any of the business transaction to transport fireworks took place in Missouri. There is no allegation in the complaint that the contract was entered into in Missouri. This is not a tort claim, real estate is not involved, insurance is not involved, and the paternity of a child is not involved.

A review of the complaint shows the following references to Missouri:

> Defendant is a shipping company based in China which does business in Missouri. Antong advertises on its website membership in the WCA Family of Logistics Network, which has members in Missouri. On information and belief, Antong does actual business with logistics companies located in Missouri and has arranged shipments into Missouri.

(complaint, p. 1).

4

Those are all of the references to Missouri in the nine-page complaint. Because plaintiff has not alleged any Missouri-based conduct by defendant AnTong that has any bearing on plaintiff's claims, the Missouri long-arm statute does not apply.

Plaintiff argues that "AnTong does business in Missouri." In support of that conclusion, plaintiff points to the affidavit of Michael R. Nicol, President of plaintiff ITTI. In that affidavit, Mr. Nicol states that in September 2012, the National Fireworks Association held its annual convention and trade show in Joplin, Missouri. Mr. Nicol states that "a Kevin and Simon from Shanghai Antong" attended this convention. Despite having no last names for these individuals, Mr. Nicol states that during the convention and trade show, he spoke with Kevin and Simon about the steps that defendant AnTong was taking to resolve this matter. Mr. Nicol also states that it is his belief that AnTong's largest U.S. client is Marisol International whose headquarters is located in Springfield, Missouri, and that representatives of AnTong have traveled to Missouri to meet with Marisol and conduct business. Mr. Nicol states that in 2010 he went to another convention in Branson, Missouri, and spoke with Jeffery Zhu from AnTong to discuss entering into a business relationship. Finally Mr. Nicol states that he contacted a statistical database firm and learned that defendant AnTong was the carrier for ten shipments of fireworks into the State of Missouri or to customers who themselves are in Missouri. These facts are insufficient to establish that Missouri's long-arm statute applies.

Section 506.500 provides that doing business in Missouri gives rise to jurisdiction only as to causes of action "arising from the doing of any such acts." In other words, if the defendant is transacting business in Missouri, the cause of action must arise from the defendant's transacting business in Missouri. In Viasystems, Inc. v. EMB-Papst St. Georgen GmbH & Co., 646 F.3d 589, 592 (8th Cir. 2011), the court of appeals held that personal jurisdiction does not exist unless the cause of action arose out of an activity covered by Missouri's long-arm statute. Here, none of the activities listed by plaintiff in its response have

anything to do with the causes of action in this case. Therefore, Missouri's long-arm statute does not apply and defendant's motion to dismiss will be granted.

**Due Process.** Even if the long-arm statute applied, plaintiff would still be required to satisfy the due process requirement before personal jurisdiction is found to exist. The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945). A nonresident generally must have certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. at 316. By requiring that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign, the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. Burger King Corp. v. Rudzewicz, 471 U.S. at 472; Shaffer v. Heitner, 433 U.S. 186, 218 (1977) (Stevens, J., concurring); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

In Pennoyer v. Neff, 95 U.S. 714, 720 (1878), decided shortly after the enactment of the Fourteenth Amendment, the Court held that a tribunal's jurisdiction over persons reaches no farther than the geographic bounds of the forum. Later, due to changes in the technology of transportation and the growth of interstate business activity, personal jurisdiction analysis changed as well. In 1945, the Supreme Court, in International Shoe Co. v. Washington, 326 U.S. 310, held that a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

6

justice.'" Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853 (2011) (quoting International Shoe, 326 U.S. at 316).

Following International Shoe's concept of "fair play and substantial justice" came the development of two categories of personal jurisdiction. The first category, which today is called specific jurisdiction, is when the suit arises out of or relates to the defendant's contacts with the forum. The second category, which is referred to as general jurisdiction and is much more rare than specific jurisdiction, applies when a foreign corporation's continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities. "A court may assert general jurisdiction over foreign corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. at 2851.

Corporate operations within a state are not alone enough to establish general jurisdiction, however. A corporation's "continuous activity of some sorts" within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity. International Shoe Co. v. Washington, 326 U.S. at 318.

In this case, plaintiff attempts to make a weak showing of specific jurisdiction: "[I]n 2012 representatives from AnTong met with representatives from ITTI and T-Z Cargo in Joplin, Missouri and discussed the matter giving rise to this suit." It cites the affidavit of Michael Nicol, President of plaintiff ITTI, in which he states that in September 2012 he attended a National Fireworks Association convention and trade show in Joplin, Missouri, and while there he talked with a "Kevin" and a "Simon" from AnTong about the steps that defendant was taking to resolve this matter. However, the causes of action in this case did not arise from a discussion Mr. Nicol had at a convention with two men whose last names and positions with

7

defendant AnTong are not known. The incorrect shipment of fireworks had already occurred at the time this convention (and hence this discussion) took place. There is no specific jurisdiction.

General jurisdiction is more difficult to establish than specific jurisdiction. In Daimler AG v. Bauman, 134 S. Ct. 746, 760-761 (2014), the plaintiff urged the court to find that general jurisdiction exists "in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" The Supreme Court declined to so hold, characterizing that particular formulation of general jurisdiction as "unacceptably grasping."

> [T]he words "continuous and systematic" were used in International Shoe to describe instances in which the exercise of specific jurisdiction would be appropriate. See 326 U.S., at 317 (jurisdiction can be asserted where a corporation's in-state activities are not only "continuous and systematic, but also give rise to the liabilities sued on"). Turning to all-purpose jurisdiction, in contrast, International Shoe speaks of "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit . . . *on causes of action arising from dealings entirely distinct from those activities.*" Id., at 318 (emphasis added). See also Twitchell, Why We Keep Doing Business With Doing-Business Jurisdiction, 2001 U. Chi. Legal Forum 171, 184 (International Shoe "is clearly not saying that dispute-blind jurisdiction exists whenever 'continuous and systematic' contacts are found."). Accordingly, the inquiry under Goodyear is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." 564 U.S., at ---, 131 S. Ct., at 2851.

Daimler AG v. Bauman, 134 S. Ct. at 761.

Plaintiff argues that AnTong's activities within Missouri are substantial and continuous and sufficient to render it essentially at home in Missouri. In support of that argument, plaintiff states that:

1. AnTong is a member of a Missouri based National Fireworks Association

2. Representatives of AnTong have attended conventions in Missouri

3. AnTong "regularly and routinely" ships fireworks products to Missouri

These activities are woefully insufficient to establish general jurisdiction. Plaintiff cites Fairbanks Morse Pump Corp. v. ABBA Parts, Inc., 862 F.2d 717, 719 (8th Cir. 1988), in

8

support of its assertion that "attendance at trade shows and a display booth for purposes of soliciting future sales is a business contact with Missouri." That case is inapposite. First, I note that "a business contact" is not what is required to establish general jurisdiction. Second, the court in Fairbanks remanded, stating that the district judge who granted the defendant's motion to dismiss for lack of personal jurisdiction "may have been correct, but we cannot say that with certainty on the basis of the present record."

Plaintiff describes at length the discussions held by Mr. Nicol and people associated with defendant AnTong while at conventions in Missouri. However, the "minimum contacts" analysis looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014), citing International Shoe Co. v. Washington, 326 U.S. at 319. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." Walden v. Fiore, 134 S. Ct. at 1123, quoting Burger King Corp. v. Rudzewicz, 471 U.S. at 475. In this case, the contacts are not even with persons affiliated with the State of Missouri -- the contact are with Mr. Nicol who is not associated with Missouri but who happened to be at a convention in Missouri.

Plaintiff also urges the finding of general jurisdiction based on the fact that a statistical company provided information that defendant "has acted as the Carrier for ten (10) separate shipments of fireworks into the State of Missouri, or to customers who are located in Missouri." Again, this is woefully insufficient for a finding of general jurisdiction which, because the actions in the state are unrelated to the cause of action, is subject to a higher due-process threshold. Viasystems, Inc. v. EMB-Papst St. Georgen GmbH & Co., 646 F.3d 589, 595 (8th Cir. 2011), citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984). As the Supreme Court stated in Daimler AG v. Bauman, 134 S. Ct. at 761, the inquiry is not

9

whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's affiliations with the state are so "continuous and systematic" as to render it essentially at home in the forum state.

Here we have a plaintiff who is a Washington State corporation with its principal place of business in Renton, Washington. We have a defendant who is a Chinese corporation with its principal place of business in Shanghai, China. None of the non-parties who played a role in the transaction are from Missouri -- T-Z Cargo Ltd. is a company located in China; Maersk Line is located in Denmark; Allports Forwarding Inc., is located in Portland, Oregon; Glorious Company is located in China; Western Fireworks, Inc., is located in Aurora, Oregon; Sinotrans Hunan Co. is located in China. None of the factual allegations in the complaint are remotely related to Missouri: ITTI (a Washington company) entered into a contractual agreement with AnTong (a Chinese company) through T-Z Cargo Ltd. (a Chinese company) to ship fireworks manufactured by Glorious Company (a Chinese company) to Western Fireworks (an Oregon company), but the fireworks were incorrectly sent to PT Galaksi Raya (an Indonesian company), and the fireworks sent to Western Fireworks were redelivered to a port in Long Beach, California, and this harm, plaintiff believes, should be compensated in part with settlement funds received by AnTong from Sinotrans Hunan (a Chinese company). Missouri has absolutely no interest in this case. Missouri has no interest in any of the parties in this case. No contract was made in Missouri. No parties or non-parties have anything to do with Missouri. No one in Missouri was harmed by this transaction. The shipment of fireworks that is the subject of this dispute never came anywhere near Missouri.

There is no plausible argument that specific jurisdiction exists in this case. The only basis for general jurisdiction is the attendance by two or three of defendant's members at conventions in Missouri, and the shipping of other companies' products to Missouri in 2014 (the shipment at issue here occurred in 2011). Such tenuous contact with a state cannot form

10

the basis of general jurisdiction when compared to the holdings of the United States Supreme Court. For example, in Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984), the defendant's contacts with Texas were confined to sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from a Texas-based helicopter company for substantial sums; and sending personnel to Texas for training. The Supreme Court held those contacts insufficient to warrant Texas's assertion of personal jurisdiction over a nonresident corporation in a cause of action not related to those transactions. The contacts with Missouri in the case at bar are significantly fewer and less substantial than the contacts found insufficient in Helicopteros.

### III.  CONCLUSION

Based on the above, I find that (1) Missouri's long-arm statute does not apply because the cause of action does not arise from defendant's transaction of business within this state; (2) specific jurisdiction does not exist because the suit does not arise out of or relate to the defendant's contacts with Missouri; and (3) general jurisdiction does not exist because defendant's contacts with Missouri are not so continuous and systematic as to render it essentially at home in Missouri. Therefore, it is

ORDERED that defendant's motion to dismiss for lack of personal jurisdiction is granted.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
October 3, 2014